RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0201p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

MELVIN STEGER,

               *Plaintiff-Appellee*,

  *v.*

STEVEN WILLIS,

               *Defendant-Appellant*.

No. 25-6006

Appeal from the United States District Court for the Eastern District of Kentucky at Covington.
No. 2:24-cv-00095—Danny C. Reeves, District Judge.

Decided and Filed:  July 21, 2026

Before:  KETHLEDGE, NALBANDIAN, and HERMANDORFER, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Jeffrey C. Mando, ADAMS LAW, PLLC, Covington, Kentucky, for Appellant. Alan J. Statman, STATMAN HARRIS, LLC, Cincinnati, Ohio, for Appellee.

_____

## OPINION

_____

KETHLEDGE, Circuit Judge.  Melvin Steger alleges that—without warning, while he stood on his front porch, albeit after shouting an obscenity—Officer Steven Willis slammed him to the ground and punched him twice before handcuffing him.  The district court held, among other things, that those alleged facts would amount to a violation of Steger's clearly established rights under the Fourth Amendment.  We agree and affirm.

We view the factual record in the light most favorable to the plaintiff, unless video footage clearly contradicts the plaintiff's account. *See Jarvela v. Washtenaw County*, 40 F.4th 761, 763 (6th Cir. 2022).

In 2023, Stephanie Yung called Covington police to report that her neighbor, Melvin Steger, had stolen her insulin pump after she accidentally dropped it outside her house. Officers Steven Willis and Mandie Appleman responded to the call. Upon arriving, the officers briefly interviewed Yung, then walked next door to Steger's house, where Steger stood on his porch behind an iron gate.

Willis stood near the top of the front steps, in front of the gate, with his bodycam recording the encounter. Willis asked whether Steger had the insulin pump; Steger said he had seen it lying in the street, but denied taking it. As they spoke, Steger put his hand into his pocket; Willis told Steger to keep his hands out of his pockets; and Steger ignored the command and drew a cellphone from his shorts. He then began to record a video of the officers.

Soon Steger grew agitated. Willis asked him for identification; Steger refused. Steger told the officers to obtain a warrant and yelled, "Get off my fucking property." Willis said, "Hey, don't cuss, man." Steger responded, "Fuck you!" Then Willis instantly slammed the gate forward with both hands, striking Steger and knocking him backwards. In the same motion, Willis stepped up onto the porch, grabbed Steger's arm and shirt, and drove him to the ground, where Willis and Appleman handcuffed him face-down. During that sequence, Steger says, Willis also punched him twice. The officers then put Steger in their police car.

Covington police charged Steger with disorderly conduct, theft, assaulting an officer, and resisting arrest, among other offenses. He was later convicted of theft.

Steger thereafter sued Officers Willis and Appleman under 42 U.S.C. § 1983, claiming that the officers had used excessive force in violation of the Fourth Amendment. The officers moved for summary judgment on grounds of qualified immunity. The district court denied the motion as to Willis, holding that, on this record, a reasonable jury could find facts amounting to excessive force, which under the circumstances the caselaw clearly proscribed.

We review de novo the district court's denial of qualified immunity. *Hayden v. Green*, 640 F.3d 150, 153 (6th Cir. 2011). To overcome qualified immunity, Steger must show that Willis's conduct violated Steger's constitutional rights, and that those rights were "clearly established"—meaning that the caselaw would have made clear to Willis "that his conduct was unlawful in the situation he confronted." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citation omitted).

Here, on both points, our analysis mirrors that of the district court. We begin with the question whether the facts in this case, as a jury could find them, would amount to a violation of Steger's Fourth Amendment rights. To that end, we consider the severity of Steger's offense, whether he posed an immediate threat to anyone, and whether he resisted arrest. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). Here, Steger's alleged offense—disorderly conduct, on his front porch—was not serious. *See Goodwin v. City of Painesville*, 781 F.3d 314, 322 (6th Cir. 2015). Nor did Steger pose an imminent threat to Willis: an iron gate separated them, and Steger made no attempt to leave his front porch. Instead, as a jury could find from the video, Steger was content to harangue the officers and record them. Nor did Willis tell Steger he was under arrest before Willis—instantly and without warning—slammed open the gate directly into Steger's body. The triggering event for that action, a jury could find, was Steger's "Fuck you!" to Willis—about two minutes into a tedious and, on Steger's side, obnoxious exchange.

The video provides ample evidence for a jury to make all these findings; and Steger's testimony would allow a jury also to find that, during this sequence, Willis punched him twice. Those facts—that Willis slammed Steger's gate into him and punched him twice, on his own front porch, without warning and without telling Steger he was under arrest—would violate the Fourth Amendment. *See, e.g.*, *Coffey v. Carroll,* 933 F.3d 577, 589 (6th Cir. 2019).

That leaves the question whether the caselaw gave Willis "fair notice" that these actions were unlawful. *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam). The caselaw provides such notice when it puts "beyond debate" that an officer's force was excessive. *Gambrel v. Knox County*, 25 F.4th 391, 400 (6th Cir. 2022) (citation omitted). In some cases the question is whether, under the relevant circumstances, the caselaw clearly proscribed the specific force that the officer used. *See, e.g.*, *Zorn v. Linton*, 146 S. Ct. 926, 931 (2026) (per curiam) (use

of "rear-wristlock" on protester was not clearly excessive force); *Walker v. Davis*, 649 F.3d 502, 503–04 (6th Cir. 2011) (ramming motorcycle with police cruiser for a moving violation was clearly excessive force). In other cases the question is whether, instead, the caselaw clearly proscribed the use of any "physical force" at all. *Coffey*, 933 F.3d at 589; *see Gambrel*, 25 F.4th at 403.

This case falls into the latter category. Our caselaw has long made clear that a "suspect has a clearly established constitutional right to be free from the use of physical force by police officers when he is not resisting efforts to apprehend him." *Coffey*, 933 F.3d at 589; *see also, e.g.*, *Gambrel*, 25 F.4th at 403 (explaining that, by June 2016, "our precedent had clearly established the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest" (citation omitted)); *Shumate v. City of Adrian*, 44 F.4th 427, 450 (6th Cir. 2022) ("By 2019, when this incident occurred, the right to be free from physical force when one is not actively resisting the police was clearly established."). Those precedents, on these alleged facts, put beyond debate that Willis's use of force violated the Fourth Amendment.

Willis responds that Steger has cited only cases involving the use of pepper spray, which he says would not warn him of the illegality of slamming Steger to the ground and punching him. But at issue here is the illegality of any physical force, not its calibration. And we assess that issue in light of "all relevant precedents," not just the cases cited by Steger. *Elder v. Holloway*, 510 U.S. 510, 512 (1994). The district court was right to deny qualified immunity to Willis.

The district court's judgment is affirmed.